Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHERINE COFFMAN,<br><br>           Plaintiff,<br><br>       v.<br><br>ADAMAS PHARMACEUTICALS, INC., MARTHA J. DEMSKI, WILLIAM W. ERICSON, SPYRIDON PAPAPETROPOULOS, NEIL F. MCFARLANE, ANNA S. RICHO, MICHAEL F. BIGHAM, JOHN A. MACPHEE, and DAVID L. MAHONEY,<br><br>           Defendants. | Case No._____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Catherine Coffman ("Plaintiff"), by and through her undersigned counsel, for her complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

- 1 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## NATURE OF THE ACTION

1. This is an action brough by Plaintiff against Adamas Pharmaceuticals, Inc. ("Adamas" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(e), 78t(a), and to enjoin the expiration of a tender offer (the "Tender Offer") on a proposed transaction, pursuant to which Adamas will be acquired by Supernus Pharmaceuticals, Inc. ("Supernus"), through Supernus's subsidiary Supernus Reef Inc. ("Purchaser") (the "Proposed Transaction").

2. On October 11, 2021, Adamas and Supernus issued a joint press release announcing that they had entered into an Agreement and Plan of Merger, dated October 10, 2021 (the "Merger Agreement"), to sell Adamas to Supernus. Under the terms of the Merger Agreement, Supernus will acquire all outstanding shares of Adamas for: (i) $8.10 per share in cash (the "Cash Amount"), plus (ii) two contingent value rights per share (each, a "CVR"), which each represent the right to receive $0.50 per CVR in cash upon the achievement of certain milestones in connection with the net sales of the Company's product, GOCOVRI (the "Offer Price"). Pursuant to the Merger Agreement, Purchaser commenced the Tender Offer on October 25, 2021. The Tender Offer is scheduled to expire at 12:00 midnight, New York Time, on November 24, 2021 (one minute following 11:59 p.m., New York Time, on November 23, 2021). The Proposed Transaction is valued at approximately $400 million.

3. On October 25, 2021, Adamas filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC. The Recommendation Statement, which recommends that Adamas stockholders tender their shares in the Tender Offer, omits or misrepresents material information concerning, among other things: (i) Adamas management's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support

- 2 -

the fairness opinion provided by Lazard Freres & Co. LLC ("Lazard"); and (iii) Company insiders' potential conflicts of interest. Defendants authorized the issuance of the false and misleading Recommendation Statement in violation of Sections 14(e) and 20(a) of the Exchange Act.

4.     In short, the Proposed Transaction will unlawfully divest Adamas' public stockholders of the Company's valuable assets without fully disclosing all material information concerning the Proposed Transaction to Company stockholders. To remedy defendants' Exchange Act violations, Plaintiff seeks to enjoin the expiration of the Tender Offer unless and until such problems are remedied.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(e) and 20(a) of the Exchange Act pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.     This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Adamas is headquartered in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Adamas.

- 3 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

9. Defendant Adamas is a Delaware corporation with its principal executive offices located at 1900 Powell Street, Suite 1000, Emeryville, California 94608. Adamas is a fully integrated company focused on growing a portfolio of therapies to address a range of neurological diseases. Adamas' common stock is traded on the Nasdaq Global Market under the ticker symbol "ADMS."

10. Defendant Martha J. Demski ("Demski") has been a director of the Company since March 2014.

11. Defendant William W. Ericson ("Ericson") has been a director of the Company since 2005.

12. Defendant Spyridon Papapetropoulos ("Papapetropoulos") has been a director of the Company since November 2020.

13. Defendant Neil F. McFarlane ("McFarlane") has been Chief Executive Officer ("CEO") and a director of the Company since September 2019.

14. Defendant Anna S. Richo ("Richo") has been a director of the Company since August 2020.

15. Defendant Michael F. Bigham ("Bigham") has been a director of the Company since September 2016.

16. Defendant John A. MacPhee ("MacPhee") has been a director of the Company since May 2013.

17. Defendant David L. Mahoney ("Mahoney") has been Board Chair since September 2019 and a director of the Company since 2009. Defendant Mahoney previously served as Lead Independent Director from April 2014 until September 2019.

18. Defendants identified in paragraphs 10 to 17 are collectively referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

19. Supernus is a Delaware corporation with its principal executive offices located at 9715 Key West Ave, Rockville, Maryland 20850. Supernus is a biopharmaceutical company focused on the development and commercialization of products for the treatment of central nervous system diseases in the United States. Its commercial products include Trokendi XR, an extended release topiramate product indicated for the treatment of epilepsy, as well as for the prophylaxis of migraine headache; and Oxtellar XR, an extended release oxcarbazepine for the monotherapy treatment of partial onset epilepsy seizures in adults and children between 6 to 17 years of age. Supernus commercial products also comprise APOKYN, a product indicated for the acute intermittent treatment of hypomobility or off episodes in patients with advanced Parkinson's Disease ("PD"); XADAGO, a product indicated as adjunctive treatment to levodopa/carbidopa in patients with PD experiencing off episodes; and MYOBLOC, a Type B toxin product indicated for the treatment of cervical dystonia and sialorrhea in adults. Supernus's common stock trades on the Nasdaq Global Market under the ticker symbol "SUPN."

20. Purchaser is a Delaware corporation and a wholly owned subsidiary of Supernus.

**SUBSTANTIVE ALLEGATIONS**

**Company Background**

21. Formerly known as NeuroMolecular Pharmaceuticals, Inc., Adamas focuses on the discovery, development, and commercialization of medicines for patients suffering from chronic neurologic disorders in the United States. It offers GOCOVRI, an extended release capsule for the treatment of dyskinesia in patients with Parkinson's disease receiving levodopa-based therapy, with or without concomitant dopaminergic medications, as well as an adjunctive treatment to levodopa/carbidopa in patients with Parkinson's disease experiencing OFF episodes; and OSMOLEX ER, an extended release tablet to treat Parkinson's disease and drug-induced extrapyramidal reactions

in adult patients. The Company is also developing ADS-4101, which has completed two Phase 1b studies for treating partial onset seizures in patients with epilepsy. In addition, it offers NAMZARIC and NAMENDA XR, a memantine hydrochloride extended release and donepezil hydrochloride capsules for the treatment of moderate to severe dementia of an Alzheimer's type.

22. On August 9, 2021, the Company announced its second quarter 2021 financial results. Total revenues were $22.0 million in the second quarter of 2021, an increase of 17% as compared to $18.8 million in the second quarter of 2020. GOCOVRI (amantadine) extended release capsules product sales were $20.1 million in the second quarter of 2021, an increase of 12% as compared to $18.0 million in the second quarter of 2020. New paid prescriptions ("NRx") of GOCOVRI were approximately 730 in the second quarter of 2021, a 97% increase over NRx of approximately 370 in the second quarter of 2020. Total paid prescriptions ("TRx") of GOCOVRI were approximately 9,400 in the second quarter of 2021, a 19% increase over approximately 7,915 TRx in the second quarter of 2020. Reflecting on the Company's results and looking to the future, defendant McFarlane commented:

> We delivered a strong performance in the second quarter, with a robust increase in demand set to fuel future growth. We remain on track to achieve our 2021 goals as we navigate the fluid macro environment. With the continued momentum of our GOCOVRI launch alongside our disciplined approach to capital allocation, we are excited about the opportunities ahead for patients and shareholders.

**The Proposed Transaction**

23. On October 11, 2021, Adamas and Supernus issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> ROCKVILLE, MD and EMERYVILLE, CA, October 11, 2021 – Supernus Pharmaceuticals, Inc. (Nasdaq: SUPN) and Adamas Pharmaceuticals, Inc. (Nasdaq: ADMS), today announced a definitive agreement for Supernus to acquire Adamas through a tender offer for $8.10 per share in cash (or an aggregate of approximately $400 million), payable at closing plus two non-tradable contingent value rights (CVR) collectively worth up to $1.00 per share in cash (or an aggregate of approximately $50 million), for a total consideration of $9.10 per share in cash (or an aggregate of

approximately $450 million). The first CVR, worth $0.50 per share, is payable upon achieving net sales of GOCOVRI of $150 million in any four consecutive quarters between closing and the end of 2024. The second CVR, worth $0.50 per share, is payable upon achieving net sales of GOCOVRI of $225 million in any four consecutive quarters between closing and the end of 2025. The transaction is expected to close in late fourth quarter 2021 or in early first quarter 2022.

The transaction will provide Supernus with two marketed products: GOCOVRI® (amantadine) extended release capsules, the first and only U.S. Food and Drug Administration (FDA)-approved medicine indicated for the treatment of both OFF and dyskinesia in patients with Parkinson's disease receiving levodopa-based therapy; and OSMOLEX ER® (amantadine) extended release tablets, approved for the treatment of Parkinson's disease and drug-induced extrapyramidal reactions in adult patient.

"This acquisition represents a significant step to further build a strong and diverse Parkinson's disease portfolio, and aligns with our focus of acquiring value-enhancing, clinically-differentiated medicines to treat CNS diseases," said Jack Khattar, President and CEO of Supernus Pharmaceuticals. "We have a proven track record of strong commercial execution, and look forward to building on GOCOVRI's growth momentum so that more patients can benefit from access to Adamas' innovative neurological therapies."

**Strategic and Financial Benefits**

- Strengthens Parkinson's disease portfolio with GOCOVRI (amantadine) extended release capsules, the first and only FDA-approved medicine indicated for the treatment of both OFF and dyskinesia in patients with Parkinson's disease receiving levodopa-based therapy.

- Diversifies and increases revenue base and cash flow

    - Net sales of GOCOVRI were $71.2 million and $37.7 million in 2020 and for the first six months of 2021, respectively.

    - Combined with the acquisition of US WorldMeds CNS products in 2020, this transaction significantly reduces the reliance on net sales of Trokendi XR®. In the first half of 2021 and on a combined proforma basis (including revenue from US WorldMeds and Adamas transactions), net sales of Trokendi XR® represent 48% of Supernus revenues down from 72% (excluding revenue from these transactions).

- Potential synergies of $60 million to $80 million in year one due to strong overlap with existing infrastructure.

- The acquisition is expected to be significantly accretive in 2022.

"We are pleased that Supernus recognized the value created at Adamas and firmly believe this path forward is an excellent outcome for not only our shareholders, but all our stakeholders," said Neil F. McFarlane, Chief Executive Officer of Adamas Pharmaceuticals, Inc. "With their shared commitment to helping patients affected by neurological diseases and their extensive resources, Supernus can continue to advance our mission and reach.  I am extremely proud of Team Adamas for their hard work and dedication to get us to this point and am confident that partnering with Supernus will maximize the potential of our innovative therapies."

**Terms and Financing**

Under the terms of the agreement, Supernus will commence a tender offer to acquire all outstanding shares of Adamas Pharmaceuticals, Inc. for a purchase price of $8.10 per share in cash (or an aggregate of approximately $400 million) payable at closing plus two non-tradeable CVRs.  All cash consideration will be funded through existing balance sheet cash.

The CVR entitles Adamas stockholders to receive up to an additional $1.00 per share in cash (or an aggregate of approximately $50 million) payable upon GOCOVRI achieving certain net sales milestones within specified periods (subject to the terms and conditions contained in a Contingent Value Rights Agreement detailing the terms of the CVRs).  These milestones include (i) $0.50 per share payable if in any four consecutive quarters between closing and the end of 2024, net sales of GOCOVRI achieving $150 million, and (ii) another $0.50 per share payable if in any four consecutive quarters between closing and the end of 2025, net sales of GOCOVRI achieving $225 million.  There can be no assurance any payments will be made with respect to the CVR.

**Approvals and Timing of Close**

The transaction, which has been approved by the boards of directors of both companies, is expected to close in late fourth quarter 2021 or in early first quarter 2022, subject to customary closing conditions, including receipt of required regulatory approvals and the tender of a majority of the outstanding shares of Adamas' common stock.  Following the successful closing of the tender offer, Supernus will acquire any shares of Adamas that are not tendered in the tender offer through a second-step merger at the same consideration as paid in the tender offer.

**Full Year Financial Guidance**

Supernus will provide full year 2022 financial guidance during the Company's fourth quarter 2021 financial results conference call in February 2022.

**Advisors**

Jefferies LLC is acting as the exclusive financial advisor to Supernus.  Lazard is acting as the exclusive financial advisor to Adamas.  Saul Ewing Arnstein & Lehr LLP is

serving as legal counsel and Grant Thornton is providing due diligence services to Supernus, and Cooley LLP is serving as legal counsel to Adamas.

**Insiders' Interests in the Proposed Transaction**

28. Adamas insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Adamas.

29. Notably, Company insiders stand to reap substantial financial benefits for securing the deal with Supernus. The following table sets forth the cash payments the Company's executive officers and directors will receive in connection with tendering their shares in the Tender Offer:

| Name of Executive Officer or Director | Number of Shares Beneficially Owned[1] | Implied Upfront Cash Consideration for Shares | Implied CVR Consideration for Shares[2] |
|---|---|---|---|
| *Executive Officers* | | | |
| Neil F. McFarlane, *Chief Executive Officer* | 112,500 | $ 911,250 | $ 112,500 |
| Vijay Shreedhar, Ph.D., *Chief Commercial Officer* | 47,453 | $ 384,369 | $ 47,453 |
| Christopher B. Prentiss, *Chief Financial Officer* | 40,017 | $ 324,138 | $ 40,017 |
| *Non-Employee Directors* | | | |
| David L. Mahoney, *Chairman of the Board* | 112,781 | $ 913,526 | $ 112,781 |
| Michael F. Bigham | 5,000 | $ 40,500 | $ 5,000 |
| Martha J. Demski | 16,000 | $ 129,600 | $ 16,000 |
| William W. Ericson, J.D. | 4,624,796[3] | $37,460,848 | $4,624,796 |
| John A. MacPhee, M.P.H. | 197,000 | $ 1,595,700 | $ 197,000 |
| Spyridon Papapetropoulos, M.D., Ph.D. | 5,975 | $ 48,398 | $ 5,975 |
| Anna S. Richo, J.D. | 13,333 | $ 107,997 | $ 13,333 |
| All of our current executive officers and non-employee directors as a group (10 persons) | 5,174,855 | $41,916,326 | $5,174,855 |

30. Moreover, upon consummation of the Proposed Transaction, all vested and unvested Company options and restricted stock units ("RSUs") will be converted into the right to receive cash

- 9 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

payments. The following table sets forth the payments that Adamas insiders will receive in connection with their Company options and RSUs upon consummation of the merger:

| Name | Number of Shares Underlying Vested In The Money Company Options[1] | Number of Shares Underlying Unvested In The Money Company Options[2] | In The Money Company Option Exercise Price ($)[3] | Closing Amount Payable for In the Money Company Options ($)[4][5] | CVR Amount Payable for In the Money Company Options ($)[9] | Number of Shares Underlying Restricted Stock Awards[6] | Closing Amount Payable for Company RSU Awards ($)[5][7] | CVR Amount Payable for Company RSU Awards ($)[9] | Total Closing Value ($)[5][8] | Total CVR Value ($)[9] |
|---|---|---|---|---|---|---|---|---|---|---|
| **Executive Officers** | | | | | | | | | | |
| Neil F. McFarlane | 234,372 | 215,628 | 1,960,500 | 1,684,500 | 450,000 | 487,500 | 3,948,750 | 487,500 | 5,633,250 | 937,500 |
| Vijay Shreedhar, Ph.D. | 99,008 | 85,992 | 752,325 | 746,175 | 185,000 | 137,032 | 1,109,959 | 137,032 | 1,856,134 | 322,032 |
| Christopher B. Prentiss | 47,394 | 40,106 | 490,375 | 218,375 | 87,500 | 123,750 | 1,002,375 | 123,750 | 1,220,750 | 211,250 |
| **Non-Employee Directors** | | | | | | | | | | |
| David L. Mahoney | 46,666 | 23,334 | 370,300 | 196,700 | 70,000 | 5,000 | 40,500 | 5,000 | 237,200 | 75,000 |
| Michael F. Bigham | 20,000 | 10,000 | 127,100 | 115,900 | 30,000 | 5,000 | 40,500 | 5,000 | 156,400 | 35,000 |
| Martha J. Demski | 20,000 | 10,000 | 127,100 | 115,900 | 30,000 | 5,000 | 40,500 | 5,000 | 156,400 | 35,000 |
| William W. Ericson, J.D. | 20,000 | 10,000 | 127,100 | 115,900 | 30,000 | 5,000 | 40,500 | 5,000 | 156,400 | 35,000 |
| John A. MacPhee, M.P.H. | 44,000 | 10,000 | 206,420 | 230,980 | 54,000 | 5,000 | 40,500 | 5,000 | 271,480 | 59,000 |
| Spyidon Papapetropoulos, M.D., Ph.D. | — | 30,000 | 139,100 | 103,900 | 30,000 | 15,000 | 121,500 | 15,000 | 225,400 | 45,000 |
| Anna S. Richo, J.D. | 6,666 | 23,334 | 154,500 | 88,500 | 30,000 | 11,667 | 94,503 | 11,667 | 183,003 | 41,667 |

31. Further, if they are terminated in connection with the Proposed Transaction, Adamas' named executive officers will receive substantial cash severance payments in the form of golden parachute compensation as set forth in the following table:

| Name[1] | Cash ($)[2] | Equity ($)[3] | Perquisites/ Benefits ($)[4] | Total ($)[5] |
|---|---|---|---|---|
| Neil F. McFarlane | 2,397,758 | 5,459,036 | 66,000 | 7,922,794 |
| Christopher B. Prentiss | 865,031 | 1,209,670 | 39,000 | 2,113,701 |
| Vijay Shreedhar, Ph.D. | 985,988 | 1,675,963 | 39,000 | 2,700,951 |

**The Recommendation Statement Contains Material Misstatements or Omissions**

32. The defendants filed a materially incomplete and misleading Recommendation Statement with the SEC and disseminated it to Adamas' stockholders. The Recommendation Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to tender their shares in the Proposed Transaction or seek appraisal.

33. Specifically, as set forth below, the Recommendation Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Adamas management's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Lazard; and (iii) Company insiders' potential conflicts of interest.

***Material Omissions Concerning Adamas' Financial Projections***

34. The Recommendation Statement omits material information regarding the Company's financial projections.

35. For example, the projections note that Total Revenue includes revenue for GOCOVRI, OSMOLEX ER, and NAMZARIC royalties. The Recommendation Statement, however, fails to disclose a breakdown of the projected revenue for each of the Company's products and pipeline candidates over the period from 2021 through 2032.

36. Additionally, in connection with rendering its fairness opinion, the Recommendation Statement states that Lazard reviewed "sales forecasts prepared by management of the Company taking into account information provided by management of Supernus regarding its marketing plans for GOCOVRI." Recommendation Statement at 30. Yet, the Recommendation Statement omits the sales forecasts prepared by Adamas management.

37. The Recommendation Statement also sets forth that in connection with its *Discounted Cash Flow Analysis*, Lazard utilized "the estimated after-tax unlevered free cash flows to be generated by Adamas from September 30, 2021 through the end of the year of 2032." *Id.* at 26. Yet, the Recommendation Statement only discloses the Company's levered free cash flows and fails to disclose the unlevered free cash flows relied upon by Lazard for its financial analyses, as well as all line items underlying the calculation of the Company's levered free cash flow and unlevered free cash flow.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

38. Moreover, the Recommendation Statement sets forth "[t]he non-public, unaudited prospective financial information included information for calendar years 2021 through 2032 that reflect Adamas's management's estimate of the probability of commercial success for the Company's products." *Id.* at 26. The Recommendation Statement, however, fails to disclose the Company's non-probability of success-adjusted projections so Adamas stockholders can evaluate the financial impact the Company's risk-adjustments had on the projections.

39. The omission of this information renders the statements in the "Projected Financial Information" and "Opinion of Adamas's Financial Advisor" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Lazard's Financial Analyses***

40. The Recommendation Statement fails to disclose material information concerning the financial analyses performed by the Company's financial advisor, Lazard.

41. The Recommendation Statement describes Lazard's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Lazard's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Adamas' public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Lazard's fairness opinion in determining whether to tender their shares in the Proposed Transaction or seek appraisal.

42. With respect to Lazard's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) as set forth above, the Company's after-tax unlevered free cash flows from September 30, 2021 through the end of year 2032; (ii) quantification of the inputs and assumptions underlying the discount rate range of 11.0% to 13.0%; (iii) Adamas' estimated net cash at September 30, 2021; and (iv) the number of fully diluted shares outstanding of Adamas as of October 8, 2021 utilized in the analysis.

43.     With respect to Lazard's *Premia Paid Analysis*, the Recommendation Statement fails to disclose: (i) the transactions observed; and (ii) the individual premia for each transaction.

44.     With respect to Lazard's *Research Analyst Price Targets*, the Recommendation Statement fails to disclose the price targets observed and the sources thereof.

45.     The omission of this information renders the statements in the "Opinion of Adamas's Financial Advisor" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

46.     The Recommendation Statement fails to disclose material information concerning the potential conflicts of interest faced by Company insiders

47.     The Proxy Statement fails to disclose whether any of Adamas' directors or executive officers has secured employment with Supernus upon closing of the Proposed Transaction. The Recommendation Statement also fails to disclose the specific details of all employment and retention-related discussions and negotiations that occurred between Supernus and Adamas' executive officers, including who participated in all such communications, when they occurred and their content. The Recommendation Statement further fails to disclose whether any of Supernus's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

48.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

49. The omission of this information renders the statements in the "Background of the Offer and the Merger" and "Arrangements between Adamas and Supernus" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

50. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Recommendation Statement. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other Adamas stockholders will be unable to make an informed decision whether to tender their shares in the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations
of Section 14(e) of the Exchange Act**

51. Plaintiff repeats all previous allegations as if set forth in full.

52. Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Tender Offer commenced in conjunction with the Proposed Transaction.

53. Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender her shares pursuant to the Tender Offer commenced in conjunction with the Proposed Transaction.

54. As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has

sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender her shares.

## COUNT II

**Claims Against the Individual Defendants for
Violation of Section 20(a) of the Exchange Act**

55. Plaintiff repeats all previous allegations as if set forth in full.

56. The Individual Defendants acted as controlling persons of Adamas within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of Adamas and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

57. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

58. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

59.     In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Recommendation Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

60.     By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of Adamas, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: November 5, 2021          **WEISSLAW LLP**

By: */s/ Joel E. Elkins*

Joel E. Elkins
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone:  310/208-2800
Facsimile:   310/209-2348
      -and-
Richard A. Acocelli
305 Broadway, 7th Floor
New York, NY 10007
Telephone: 212/682-3025
Facsimile:  212/682-3010

*Attorneys for Plaintiff*